**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HEIDE K. BARTNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 CV 2127 |
| v. | ) | |
| | ) | Hon. Thomas M. Durkin |
| ABBOTT LABORATORIES, ABBOTT | ) | |
| CORPORATE BENEFITS, ABBOTT | ) | |
| LABORATORIES STOCK RETIREMENT | ) | |
| PLAN, MARLON SULLIVAN and | ) | |
| ALIGHT SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ABBOTT DEFENDANTS' MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS AND STRIKE</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 1

LEGAL STANDARD............................................................................................... 3

ARGUMENT ........................................................................................................... 4

I.      BARTNETT FAILS TO STATE A SECTION 502(A)(2) CLAIM AGAINST THE
ABBOTT DEFENDANTS. ........................................................................... 4

      A.     Bartnett Does Not State a Fiduciary Claim Against Abbott Laboratories or
Marlon Sullivan. ............................................................................... 5

            *1.*     *No Allegations Linking Abbott's Role to Acts.*............................ 5

            *2.*     *No Allegations Regarding Breach by any Abbott Defendant.* ................... 7

            *3.*     *No Causal Link Between Fiduciary Duties and Plaintiff's Loss.* ............. 10

      B.     Abbott Laboratories Stock Retirement Plan Cannot Be a Fiduciary of Itself....... 11

      C.     "Abbott Corporate Benefits" Does Not Exist as a Legal Entity. .......................... 12

II.     BARTNETT FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES. .......... 13

III.    PLAINTIFF'S JURY DEMAND MUST BE STRICKEN................................................ 15

CONCLUSION...................................................................................................... 15

# TABLE OF AUTHORITIES

Page

## CASES

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) ................................................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 4

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ............................................................ 3, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2017) ........................................................................ 4, 10

*Brandt v. Grounds*,
687 F.2d 895 (7th Cir. 1982) ......................................................... 10, 11

*Brosted v. Unum Life Ins. Co. of Am.*,
421 F.3d 459 (7th Cir. 2005) ................................................................ 4

*Bunch v. W.R. Grace & Co.*,
555 F.3d 1 (1st Cir. 2009) .................................................................... 9

*Carter v. Signode Indus., Inc.*,
688 F. Supp. 1283 (N.D. Ill. 1988) ..................................................... 14

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ............................................................ 5, 7

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003) .............................................................. 12

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) .............................................................. 9

*Edwards v. Briggs & Stratton Ret. Plan*,
639 F.3d 355 (7th Cir. 2011) .......................................................... 13, 14

*Foltz v. U.S. News & World Report, Inc.*,
613 F. Supp. 634 (D.D.C. 1985) ..................................................... 11, 12

*Frahm v. Equitable Life Assurance Society of U.S.*,
137 F.3d 955 (7th Cir. 1998) ................................................................ 8

*George v. Kraft Foods Glob., Inc.*,
No. 07-CIV-1713, 2008 WL 780629 (N.D. Ill. Mar. 20, 2008) ............. 15

*Hakim v. Accenture United States Pension Plan*,
656 F. Supp. 2d 801 (N.D. Ill. 2009) ................................................... 12

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) .......................................................................... 12

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) ..................................................................... 10, 12

*In re Calpine Corp. ERISA Litig.*,
   No. 03-cv-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ............................. 9

*In re Unisys Sav. Plan Litig.*,
   74 F.3d 420 (3d Cir. 1996) ............................................................................... 9

*In re Xcel Energy, Inc., Securities, Derivatives, & "ERISA" Litig.*,
   312 F. Supp. 2d 1165 (D. Minn. 2004) ............................................................... 9

*Kamler v. H/N Telecomm. Serv., Inc.*,
   305 F.3d 672 (7th Cir. 2002) ........................................................................... 4

*Kross v. W. Elec. Co.*,
   701 F.2d 1238 (7th Cir. 1983) ....................................................................... 13

*Lindemann v. Mobil Oil Corp.*,
   79 F.3d 647 (7th Cir. 1996) ........................................................................... 14

*McDougall v. Pioneer Ranch Ltd. P'ship*,
   494 F.3d 571 (7th Cir. 2007) ......................................................................... 15

*Mugnai v. Kirk Corp.*,
   843 F. Supp. 2d 858 (N.D. Ill. 2012) ................................................................. 6

*Neil v. Zell*,
   677 F. Supp. 2d 1010 (N.D. Ill. 2009) ..................................................... 5, 9, 10

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ..................................................................................... 4, 5

*Powell v. AT&T Commc'ns., Inc.*,
   938 F.2d 823 (7th Cir. 1991) ......................................................................... 13

*Richardson v. Astellas U.S. LLC Emp. Ben. Plan & Life Ins. Co. of N. Am.*,
   610 F. Supp. 2d 947 (N.D. Ill. 2009) ............................................................... 15

*Robyns v. Reliance Standard Life Ins. Co.*,
   130 F.3d 1231 (7th Cir. 1997) ....................................................................... 14

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
   578 F.3d 505 (7th Cir. 2009) ........................................................................... 4

*Smith v. Blue Cross & Blue Shield United of Wis.*,
   959 F.2d 655 (7th Cir. 1992) ......................................................................... 14

*Specht v. Google, Inc.*,
   660 F. Supp. 2d 858 (N.D. Ill. 2009) ............................................................... 12

*Standard v. Nygren*,
   658 F.3d 792 (7th Cir. 2011) ........................................................................... 3

*Stark v. PPM Am.*, Inc.,
    354 F.3d 666 (7th Cir. 2004) ................................................................................ 14

*Steinman v. Hicks*,
    252 F. Supp. 2d 746 (C.D. Ill. 2003), *aff'd,* 352 F.3d 1101 (7th Cir. 2003) ............ 11

*Vallone v. CNA Fin. Corp.*,
    375 F.3d 623 (7th Cir. 2004) .................................................................................. 8

*Wheeler v. Pension Value Plan for Emps. of Boeing Co.*,
    No. 06-cv-500-DRH, 2007 WL 2608875 (S.D. Ill. Sept. 6, 2007) ........................... 6

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ....................... 9

*White v. Marshall & Ilsley Corp.*,
    No. 10-CV-311, 2011 WL 2471736  (E.D. Wis. June 21, 2011),
    *aff'd,* 714 F.3d 980 (7th Cir. 2013) ...................................................................... 12

*Womack v. Orchids Paper Prods. Co. 401(K) Sav. Plan*,
    769 F. Supp. 2d 1322 (N.D. Okla. 2011) ............................................................... 11

## STATUTES

29 C.F.R. § 2509.75-8 ................................................................................... 7, 10

29 U.S.C. § 1001 .................................................................................................. 1

29 U.S.C. § 1002(21) ............................................................................................ 5

29 U.S.C. § 1104(a) .............................................................................................. 8

29 U.S.C. § 1109(a) .............................................................................................. 4

29 U.S.C. § 1132(a) ........................................................................................ 4, 11

## RULES

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1, 3, 12

Federal Rule of Civil Procedure 8 .......................................................................... 3

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Abbott Laboratories, Abbott Corporate Benefits, Abbott Laboratories Stock Retirement Plan, and Marlon Sullivan (collectively the "Abbott Defendants"), by and through their attorneys, move this Court to dismiss the claims against them and to strike the jury demand from the Complaint.

## INTRODUCTION

Plaintiff Heide Bartnett ("Bartnett") was the victim of an identity thief who hacked her personal e-mail account and used her private information—none of which the thief obtained from the defendants—to steal $245,000 from her retirement account. In response, Bartnett filed this suit against the Abbott Defendants for breach of fiduciary duty, wrongly claiming that they "allow[ed] the theft to be consummated." (Compl. ¶ 1, p. 15.) Bartnett's frustration over the theft is understandable, but it is also misdirected. The Abbott Defendants neither hacked her emails nor stole her funds, and Bartnett does not allege any facts that would support a breach of fiduciary duty claim against the Abbott Defendants. Her claims should therefore be dismissed.

## BACKGROUND

Bartnett is a former employee of Defendant Abbott Laboratories ("Abbott") who retired in 2012. (Compl. ¶ 13.) As an employee, she participated in the Defendant Abbott Laboratories Stock Retirement Plan (the "Plan"), which is a defined contribution plan regulated by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, established by Abbott for the benefit of its employees. (*Id.* ¶¶ 14, 19.) When she retired, Bartnett left the funds in her Plan account and continued to receive account statements and notifications via U.S. Mail. (*Id.* ¶¶ 14, 20.)

Defendant Alight Solutions, LLC ("Alight") provides services to the Plan. (*Id.* ¶ 7.) Among other things, it operates the abbottbenefits.com website that allows participants to manage

their accounts online.  (*Id.*)  Alight also staffs and manages the Abbott Benefits Center[1] which allows participants to access their accounts over the phone.  (*Id.*)

The wrongdoer in this case is an identity thief who obtained Bartnett's social security number, date of birth, and access to her e-mail account—that is, all identifiers typically used to secure accounts—from sources other than the defendants.  On December 29, 2018, according to the Complaint, the identity thief accessed Bartnett's account in the Plan online through the abbottbenefits.com website and chose the "forgot password" option.  (*Id.* ¶ 26.)  The identity thief *already* had Bartnett's social security number and date of birth, which the thief entered when challenged by the website.  (*Id.* ¶ 27.)  A one-time security code was sent to Bartnett's personal e-mail account – the account Bartnett herself had selected as her preferred means of communication (*id.* ¶ 17), and which already had been hacked by the identity thief.  The identity thief obtained the security code from Bartnett's e-mail account and entered it to access Bartnett's retirement account online.  (*Id.* ¶ 28.)  The identity thief then changed the password to Bartnett's retirement account and added direct deposit information for a new SunTrust Bank account.  (*Id.* ¶ 29.)

A notification of the direct deposit addition was mailed to Bartnett on January 1, 2019.  (*Id.* ¶ 34.)  The Complaint is silent about when Bartnett received this written notification.  She does acknowledge, however, that her husband logged into her account on January 4, 2019 (*id.* ¶ 35), after the SunTrust Bank account had been added, but before any funds had been transferred.

On January 8, 2019, the identity thief (or someone working with them) called the Abbott Benefits Center pretending to be Bartnett.  (*Id.* ¶ 37.)  A one-time security code was sent to

---

[1] Throughout her Complaint, Bartnett refers to the Abbott Benefits Center as "Abbott Benefits Service Center," "Abbott Benefits Support Center" or "Abbott Corporate Benefits."  For accuracy, it is referred to as "Abbott Benefits Center" throughout this Motion.

Bartnett's e-mail account to verify identity, and the identity thief again entered the code successfully. (*Id.* ¶ 38.) As a security measure, funds cannot be transferred to a new bank account for seven days after it has been added to a participant's account. (*Id.* ¶ 32.) Because over nine days had passed since the SunTrust Bank account had been added, the identity thief was able to have a customer service representative authorize a transfer of $245,000 from the retirement account to the SunTrust account. (*Id.* ¶¶ 32, 40.) A notification of the transfer was sent to Bartnett by first class mail on January 9, 2019. (*Id.* ¶ 41.)

Bartnett alleges she received notification of this transfer on January 14, 2019 (*id.*), the same day the funds were transferred (*id.* ¶ 42). She called the Abbott Benefits Center the next day to report that money was missing from her retirement account, whereupon her account was immediately frozen and she was told to contact the police. (*Id.* ¶¶ 44-45.) Defendants then immediately assisted Bartnett in recovering $48,991 in taxes withheld from the withdrawal and $59,494.02 from SunTrust Bank, for a total of $108,485.02, all of which was deposited back in her retirement account, reducing Bartnett's loss from the theft to approximately $137,000. (*Id.* ¶¶ 55-56.) Although Bartnett's attorney engaged in subsequent discussions with Abbott, Bartnett ultimately filed this lawsuit without exhausting, or even initiating, the formal administrative review process under the Plan. (*Id.* ¶¶ 65-67.)

## LEGAL STANDARD

To survive this Rule 12(b)(6) Motion to Dismiss for failure to state a claim, Bartnett must satisfy the pleading requirements of Federal Rule of Civil Procedure 8. The primary purpose of Rule 8 "is to give defendants fair notice of the claims against them and the grounds supporting the claims," *Standard v. Nygren,* 658 F.3d 792, 797 (7th Cir. 2011), which entitles "[e]ach defendant … to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). "[L]abels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2017). Instead, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief'" against each defendant that "'is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

## I.  BARTNETT FAILS TO STATE A SECTION 502(A)(2) CLAIM AGAINST THE ABBOTT DEFENDANTS.

In Count I of her Complaint, Bartnett asserts breach of fiduciary duty claims against the Abbott Defendants under Section 502(a)(2) ERISA[2], which allows a plan "participant" to bring an action "for appropriate relief" under ERISA § 409.  29 U.S.C. § 1132(a)(2).  Section 409 provides that a "person who is a fiduciary with respect to a plan" who breaches "the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter" shall be liable "to make good to such plan any losses to the plan" resulting from the breach.  29 U.S.C. § 1109(a).  Thus, to state a Section 502(a)(2) claim, Bartnett must allege plausible facts that *each* Abbott Defendant acted as a fiduciary of the plan, breached its fiduciary duty, and caused a loss to the plan by the breach. *Sharp Elecs. Corp. v. Metro. Life Ins. Co.,* 578 F.3d 505, 512 (7th Cir. 2009) (citing *Pegram v. Herdrich,* 530 U.S. 211, 223–26 (2000)); *Brosted v. Unum Life Ins. Co. of Am.,* 421 F.3d 459, 465 (7th Cir. 2005) (citing *Kamler v. H/N Telecomm. Serv., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002)). The Complaint fails to state such a claim against any Abbott Defendant.

---

[2] Plaintiff also asserts in Count I a Section 502(a)(2) claim against Alight, and, in Count II, a claim for breach of the Illinois Consumer Fraud and Deceptive Trade Practices Act against Alight.

A. **Bartnett Does Not State a Fiduciary Claim Against Abbott Laboratories or Marlon Sullivan.**

Abbott is the Plan Sponsor and Marlon Sullivan ("Sullivan") presently is the Plan Administrator and named fiduciary of the Plan. *See* Compl. ¶¶ 3, 6. But their fiduciary status for certain purposes does not make them liable for every wrong alleged by a plan participant. Bartnett's Section 502(a)(2) claims against Abbott and Sullivan should be dismissed because she fails to allege facts establishing the necessary elements of those claims.

1. *No Allegations Linking Abbott's Role to Acts.*

Bartnett must allege more than Abbott's title in the Plan. Unless specifically named as a fiduciary in a plan, a person is a fiduciary under ERISA only "*to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (emphasis added); *see Neil v. Zell*, 677 F. Supp. 2d 1010, 1018 (N.D. Ill. 2009) ("To be an ERISA fiduciary, a party must be named as a fiduciary in the plan or meet ERISA's functional definition…"). Bartnett does not allege that Abbott is a named fiduciary, but rather that Abbott is a functional fiduciary under 29 U.S.C. § 1002(21)(A). (Compl. ¶ 3.) Thus, Bartnett must allege facts that Abbott was "a fiduciary as that term is defined in the statute *and* that it was acting in its capacity as a fiduciary at the time it took the actions that are the subject of the complaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463, 471-72 (7th Cir. 2007) (emphasis added) (citing *Pegram v. Herdrich,* 530 U.S. 211, 223-226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is … whether that person was acting as a fiduciary … when taking the action subject to the

complaint.")).  Bartnett must allege facts linking Abbott's role to the acts that resulted in the loss alleged in the Complaint.  She has not done so.

The Complaint simply parrots the statutory definition of a fiduciary by stating Abbott "exercises authority or control respecting management or disposition of the Stock Retirement Plan's assets, it exercises discretionary authority or discretionary control respecting management of the Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the Plan."  (Compl. ¶ 3.)  Critically, the factual allegations in the Complaint do not involve any of these responsibilities, and reciting the statutory definition of a fiduciary has never been sufficient to state a Section 502(a)(2) claim.  *See, e.g., Mugnai v. Kirk Corp.,* 843 F. Supp. 2d 858, 871-872 (N.D. Ill. 2012) (dismissing conclusory fiduciary allegations that "failed to allege sufficient facts linking the [defendants'] fiduciary obligations" to the challenged acts); *Wheeler v. Pension Value Plan for Emps. of Boeing Co.,* No. 06-cv-500-DRH, 2007 WL 2608875, at *2 (S.D. Ill. Sept. 6, 2007) ("A complaint that merely recites the language of the [ERISA] statute . . . does not satisfy even the lenient federal notice pleading standard.").

All of Bartnett's factual allegations concern Alight.  She alleges it is Alight, not Abbott, which "operated the [Abbott Benefits Center] telephone customer service center and website at abbottbenefits.com" and "direct[ed]" the "unauthorized distributions" from her account.  (Compl. ¶ 7.)  She identifies two acts, both by Alight, which supposedly "allow[ed] the theft to be consummated": (1) an Alight customer service representative "failed to enforce a security question routine" during a December 31 call with the identity thief and disclosed Bartnett's mailing address

(Compl. ¶¶ 1, 30, 32); and (2) Alight mailed notices of the identity thief's direct deposit account addition and account transfer to Bartnett, rather than emailing the notices (*id.* ¶¶ 34, 41).[3]

The only factual allegations in the Complaint concerning Abbott relate to discussions between Bartnett's prior attorney and an Abbott in-house attorney months *after* the distributions and any purported fiduciary breaches occurred. (*See* Compl. ¶¶ 54, 58-60, 62-63.) Bartnett admits that the in-house attorney was not a decision-maker (*see id.* ¶ 63), she is not a named fiduciary or plan administrator, and there is no allegation that she was acting as a functional fiduciary of the Plan. *See* 29 C.F.R. § 2509.75-8, at D-2 ("[m]aking recommendations to others for decisions with respect to plan administration" for a plan is a ministerial function and not a fiduciary one). An in-house attorney's "arms-length negotiations" cannot be construed to be the acts of a fiduciary. *See Chicago Dist. Council of Carpenters Welfare Fund,* 474 F.3d at 477 (holding that defendant was not a fiduciary when engaged in "arms-length negotiations" with plaintiff). Because Bartnett identifies no fiduciary acts by Abbott, her fiduciary duty against Abbott necessarily fails.

### 2. *No Allegations Regarding Breach by any Abbott Defendant.*

Bartnett likewise does not allege facts supporting a breach of fiduciary duty by either Abbott or Sullivan. She alleges that all of the "Defendants breached their fiduciary duties of loyalty and prudence" by "causing, allowing, or processing unauthorized distributions of Ms. Bartnett's Plan account assets; failing to confirm authorizations for distributions with Ms. Bartnett before making distributions; failing to provide timely notice of distributions to Ms. Bartnett by telephone or email; failing to identify and halt suspicious distribution requests […]; failing to

---

[3] Bartnett also alleges that "Defendants knew or should have known of the possibility of individuals attempting to make unauthorized withdrawals from retirement plans it oversaw or managed, due to prior similar incidents." (Compl. ¶ 52.) This allegation appears to be directed at Alight, which provides services to other plans. Bartnett does not articulate how the Abbott Defendants would have known of incidents with other plans.

establish distribution processes to safeguard the Plan's assets against unauthorized withdrawals; failing to monitor other fiduciaries' distribution processes, protocols and activities; and related acts and omissions." (Compl. ¶ 72.) Bartnett does not differentiate among the Defendants, or identify which Defendant is alleged to have breached what fiduciary duty by committing any action, which by itself merits dismissing her claims. *See, e.g., Bank of Am.*, 725 F.3d at 818 ("A complaint based on a theory of collective responsibility must be dismissed.").

Insofar as these allegations are made against Abbott and Sullivan, Bartnett fails to state a claim against them for breach of the duties of loyalty or prudence, or the duty to monitor. To state a claim for breach of the duty of loyalty, Bartnett must allege facts demonstrating that a defendant acted for some reason other than "the exclusive purpose" of providing benefits to participants. *Allen v. GreatBanc Tr. Co.,* 835 F.3d 670, 678 (7th Cir. 2016) (quoting 29 U.S.C. § 1104(a)(1)(A)). The duty of loyalty requires a fiduciary to act in the interest of participants rather than in its own self-interest, *see Frahm v. Equitable Life Assurance Society of U.S.*, 137 F.3d 955, 959 (7th Cir. 1998), and also includes an obligation not to "mislead plan participants or misrepresent the terms or administration of a plan." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 640 (7th Cir. 2004) (quotation omitted). Bartnett does not allege that Abbott or Sullivan engaged in any self-dealing or misled her in any way. She therefore fails to state a loyalty claim against them.

To state a claim for breach of the duty of prudence, Bartnett must allege facts demonstrating that a defendant failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Allen,* 835 F.3d at 678 (quoting 29 U.S.C. § 1104(a)(1)(B)). The standard for determining prudence does not analyze results; rather, it examines whether the fiduciary's process and method in arriving at the

challenged decision was imprudent. *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996); *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7–8 (1st Cir. 2009) ("[T]he test of prudence – the Prudent Man Rule – is one of *conduct*, not a test of performance. . . .") (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983)).

Again, the Complaint is devoid of allegations regarding the processes or methods of Abbott and Sullivan, which are necessary elements to state a prudence claim against them. The only factual allegations are against Alight.[4] Because Bartnett does not allege that any part of the process for selecting and retaining Alight was deficient, she fails to state a prudence claim against Abbott or Sullivan.

To state a claim for breach of the duty to monitor, Bartnett must allege facts demonstrating a defendant failed in its monitoring process. *See Neil*, 677 F. Supp. 2d at 1023–24 (dismissing monitoring claim that alleged "only in the most general terms that the [fiduciaries] breached their duty to monitor"); *White v. Chevron Corp.*, Case No. 16-cv-0793-PJH, 2016 WL 4502808, at *16 (N.D. Cal. Aug. 29, 2016) (dismissing monitoring claim where "plaintiffs allege[d] no facts showing how the monitoring process was deficient"). The duty of an ERISA fiduciary to monitor the performance of its appointees is "relatively narrow," *In re Xcel Energy, Inc., Securities, Derivatives, & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1176 (D. Minn. 2004),[5] and requires the fiduciary to have a procedure in place to review the performance of appointees at "reasonable intervals . . . in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of

---

[4] *See supra* at 6.

[5] *See also In re Calpine Corp. ERISA Litig.*, No. 03-cv-1685, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005) (duty to monitor is "a limited one").

the plan." *Howell v. Motorola*, *Inc.,* 633 F.3d 552, 573 (7th Cir. 2011) (quoting 29 C.F.R. § 2509.75-8 at FR-17).

Bartnett does not allege any facts demonstrating a defect in the monitoring process of Abbott or Sullivan. She simply alleges that the "Defendants" failed "to monitor other fiduciaries' distribution processes, protocols and activities," but she does not allege how Abbott and Sullivan failed to do so, nor does she explain how appropriate monitoring by them might have stopped the distributions from her account. Like the claim in *Neil,* Bartnett's allegations that Abbott and Sullivan "breached [their] duty to monitor is no more than conceivable" and "fails *Twombly's* plausibility requirement." 677 F. Supp. 2d at 1024.

### 3. *No Causal Link Between Fiduciary Duties and Plaintiff's Loss.*

Finally, Bartnett fails to allege a causal link between Abbott's and Sullivan's fiduciary obligations and the theft of her retirement funds. *See Brandt v. Grounds,* 687 F.2d 895, 898 (7th Cir. 1982) ("A causal connection is required between the breach of fiduciary duty and the losses incurred."). While Bartnett alleges that Alight wrongly disclosed her mailing address to the identity thief, and mailed notices rather than emailing them to Bartnett, these actions are not fiduciary, *see* 29 C.F.R. § 2509.75-8 D-2 (preparing employee communications and processing claims are ministerial functions that are not fiduciary) and in any event were not committed by Abbott or Sullivan.

Moreover, there is no causal connection between these actions and the loss of Bartnett's funds. Bartnett's mailing address is publicly available online through a simple Google search. Bartnett does not allege the identity thief needed that address to direct the unauthorized distribution, or that it was unavailable from the emails to which the identity thief already had access. Furthermore, Bartnett's assertions – that if she had received e-mail notifications of the direct deposit address addition and the transfer of funds she would have been able to halt the

transfer – are purely speculative and contradicted by her own allegations. The Complaint indicates that the identity thief had access to Bartnett's e-mail account for many weeks, so if notices had been emailed rather than mailed, the identity thief would have been able to intercept them.[6] In any event, it was Alight's representatives, not Abbott or Sullivan, who conversed with the identity thief and mailed the notices. Because Bartnett has failed to plausibly allege that Abbott and Sullivan breached a duty to her that caused the theft of her retirement funds, her claims against them should be dismissed. *See Brandt,* 687 F.2d at 898-99 (affirming dismissal of complaint that failed to allege causal connection between breach and loss).

### B. Abbott Laboratories Stock Retirement Plan Cannot Be a Fiduciary of Itself.

Bartnett also names the Plan as a defendant. (Compl. ¶ 5.) The Plan cannot be a fiduciary of itself. *See Steinman v. Hicks*, 252 F. Supp. 2d 746, 756-57 (C.D. Ill. 2003) (profit sharing plan "cannot be named as a defendant" in § 1132(a)(2) suit), *aff'd,* 352 F.3d 1101 (7th Cir. 2003); *see also Womack v. Orchids Paper Prods. Co. 401(K) Sav. Plan*, 769 F. Supp. 2d 1322, 1328 (N.D. Okla. 2011) ("The Plan itself cannot be held liable for breach of fiduciary duties pursuant to § 1132(a)(2) because the Plan cannot be a fiduciary of itself."); *Foltz v. U.S. News & World Report, Inc.*, 613 F. Supp. 634, 641 n.7 (D.D.C. 1985) ("Only the non-Plan defendants are eligible for fiduciary roles. The Plan, of course, cannot be a fiduciary of itself.").

Bartnett alleges the Plan "may be sued as an entity pursuant to 29 U.S.C. § 1132(d)" (Compl. ¶ 5), but that does not make it a fiduciary. A plan may be sued in an action "to recover benefits due" to a participant under ERISA § 502(a)(1)(B), but it cannot be sued as a fiduciary in an action to recover "losses to the plan" under ERISA § 502(a)(2). *See Womack,* 769 F. Supp. 2d

---

[6] Bartnett states she does not have a record of the one-time security codes emailed by Alight (*see* Compl. ¶¶ 28, 38), meaning the identity thief likely deleted them.

at 1328; *Foltz,* 613 F. Supp. at 641. Because the Plan is not a fiduciary, it should be dismissed as a matter of law. *See Howell,* 633 F.3d at 562 ("If a particular defendant is not a fiduciary, then nothing more need be said."); *Womack,* 769 F.Supp.2d at 1328 (because the plan "does not hold fiduciary status" it was "entitled to judgment as a matter of law").

### C. "Abbott Corporate Benefits" Does Not Exist as a Legal Entity.

Bartnett additionally names "Abbott Corporate Benefits" as a defendant, but no such legal entity exists. Bartnett's allegation that Abbott Corporate Benefits "is the Plan Sponsor" (Compl. ¶ 4) appears to be based on a misreading of the Plan's 2018 Annual Return/Report of Employee Benefit Plan Form 5500, attached as Exhibit 1.[7] Form 5500 identifies Abbott Laboratories as the Plan Sponsor and its mailing address as: "Corporate Benefits, D-589, AP6B-2, 100 Abbott Park Road Abbott Park Illinois 60064-6222." *See* Ex. 1, Part 2 § 2a. The Summary Plan Document ("SPD") confirms that Abbott Laboratories is the Plan Sponsor.[8] "Abbott Corporate Benefits" is the mailing address for the Plan Sponsor, not a legal entity, and should be dismissed. *See Specht v. Google, Inc.,* 660 F. Supp. 2d 858, 863 (N.D. Ill. 2009) (dismissing non-existent defendant).

---

[7] Abbott Laboratories 2018 Annual Return/Report of Employee Benefit Plan Form 5500 is publicly available on the Department of Labor's website. *See* https://www.efast.dol.gov/welcome.html (Select "Search" and enter "Abbott Laboratories Stock Retirement Plan" in "Plan Name" box.) (last accessed June 30, 2020); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (district courts should take judicial notice of information on government websites).

[8] The Court may consider the SPD without converting this Motion into one for summary judgment because the Complaint refers to the information in these documents, they are concededly authentic, and they are central to Plaintiffs' claims, including her assertions regarding the identities of Plan Sponsor and Plan Administrator (Compl. ¶¶ 4, 6) and the Plan's administrative review procedures (*id.* ¶¶ 66-67). *See Hecker v. Deere & Co.,* 556 F.3d 575, 582-83 (7th Cir. 2009) (affirming district court's decision to not convert a Rule 12(b)(6) motion to dismiss a breach of ERISA fiduciary duty complaint into a motion for summary judgment when SPDs were attached to defendant's motion); *Hakim v. Accenture United States Pension Plan*, 656 F. Supp. 2d 801, 809 (N.D. Ill. 2009) (considering SPDs attached to motion to dismiss*); White v. Marshall & Ilsley Corp.,* No. 10-CV-311, 2011 WL 2471736, at *1 n.1 (E.D. Wis. June 21, 2011), *aff'd,* 714 F.3d 980 (7th Cir. 2013) (same).

## II.    __BARTNETT FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.__

Bartnett's fiduciary duty claims against the Abbott Defendants also fail as a matter of law because she did not exhaust her administrative remedies under the Plan.  The Seventh Circuit has long "interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011); *see also Powell v. AT&T Commc'ns.*, *Inc.,* 938 F.2d 823, 826 (7th Cir. 1991) (applying exhaustion to fiduciary duty claims).  The exhaustion requirement encourages "private resolution of ERISA-related disputes," *Powell,* 938 F.2d at 825-26, and was "'intended by Congress . . . to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned.'"  *Edwards,* 639 F.3d at 360 (quoting *Kross v. W. Elec. Co.,* 701 F.2d 1238, 1244-45 (7th Cir. 1983)).

The SPD likewise states that a participant "may not initiate any lawsuit to recover under the [Plan] until [she has] exhausted the claims and appeals procedures" outlined therein.  (*See* Ex. 2 at 31).  Those procedures provide that a participant "may file a claim under the [Plan] within 90 days" after learning of the circumstances giving "rise to the claim," and that if the claim is denied, the participant "may file an appeal with the Plan Administrator . . . in writing . . . within 60 days after [she] receive[s] the written claim denial[.]"  (*Id.* at 30.)  The Plan Administrator then must provide a "final written decision" that includes the "specific reasons for the decision, with specific reference to the plan provisions on which that decision is based" and includes the "right to file a civil suit under ERISA[.]"  (*Id.* at 31.)

Bartnett admits that she failed to follow this claims and appeals procedure.  (Compl. ¶¶ 66-67.)  She alleges only that her prior counsel informally negotiated with Abbott.  (*Id.* ¶¶ 58-60, 62-65.)  Those discussions are not a substitute for the formal administrative review process under the

Plan. Because Bartnett did not pursue, much less exhaust, the administrative remedies available under the Plan, her Section 502(a)(2) claims should be dismissed.

Bartnett's failure is not excused by futility or lack of meaningful access. While an " ERISA plaintiff's failure to exhaust administrative remedies may be excused . . . where pursuing internal plan remedies would be futile," *Edwards*, 693 F.3d at 361, the Seventh Circuit applies a high standard to the futility exception, and requires that it must have been "certain" that the plaintiff's claim would have been denied had the plaintiff pursued his administrative remedies. *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (quoting *Smith v. Blue Cross & Blue Shield United of Wis.,* 959 F.2d 655, 659 (7th Cir. 1992)). Plaintiff makes a conclusory allegation that "any administrative appeal would [have been] futile" (Compl. ¶ 67), but she does not allege with certainty that her appeal would have been denied. She cannot do so, because there was no formal claim denial much less an appeal. *See Robyns v. Reliance Standard Life Ins. Co*., 130 F.3d 1231, 1237 (7th Cir. 1997). That Bartnett deemed a claim and appeal unlikely to be successful does not make it futile. *See, e.g., Stark v. PPM Am.*, Inc., 354 F.3d 666, 671-72 (7th Cir. 2004) (rejecting futility claim based on failed negotiations and defendants' potential opposition to claim).

An ERISA plaintiff's failure to exhaust administrative remedies also may be excused where "there is a lack of meaningful access to review procedures," *Edwards*, 639 F.3d at 361, which requires that the claimant must have attempted to initiate the higher level review procedure, but was denied access to that level of review. *Smith v. Blue Cross & Blue Shield United of Wis.*, 959 F.2d 655, 659 (7th Cir. 1992) (citing *Carter v. Signode Indus., Inc.*, 688 F. Supp. 1283, 1287 (N.D. Ill. 1988)). While Bartnett alleges that she was not advised of the appeal process, she never filed a claim in the first place. She was also represented by counsel at the time (Compl. ¶¶ 65-66), who should have understood how to protect her ERISA rights. Because Bartnett does not plausibly

14

allege that an exception to the exhaustion rule is applicable, her failure to exhaust administrative remedies requires dismissal of her claims.

## III.   PLAINTIFF'S JURY DEMAND MUST BE STRICKEN.

Independent of the legal flaws in Bartnett's claims, the Court should strike her jury demand.  "[N]early 30 years of Seventh Circuit authority hold[s] that there is no right to a jury trial under ERISA."  *George v. Kraft Foods Glob., Inc.,* No. 07-CIV-1713, 2008 WL 780629, at *2 (N.D. Ill. Mar. 20, 2008) (collecting cases). *See also McDougall v. Pioneer Ranch Ltd. P'ship,* 494 F.3d 571, 576 (7th Cir. 2007) ("The general rule in ERISA cases is that there is no right to a jury trial because ERISA's antecedents are equitable, not legal.") (quotation omitted); *Richardson v. Astellas U.S. LLC Emp. Ben. Plan & Life Ins. Co. of N. Am.,* 610 F. Supp. 2d 947, 950-52 (N.D. Ill. 2009) ("[T]he Seventh Circuit has continued to hold that jury trials are unavailable for ERISA plaintiffs.") (citations omitted).

## CONCLUSION

The Abbott Defendants empathize with Ms. Bartnett, who was unquestionably the victim of a crime.  That is why the Abbott Defendants helped her to recover a substantial portion of her losses.  But the Abbott Defendants are not responsible for the actions of an identity thief who obtained Ms. Bartnett's personal information, and hacked into her personal email account, entirely outside of Abbott's systems.

* * *

For the reasons set out above, Bartnett fails to state a Section 502(a)(2) claim and failed to exhaust her administrative remedies under the Plan.  Her claims against the Abbott Defendants should therefore be dismissed.

Dated: June 30, 2020                    Respectfully submitted,


                                        /s/ *Ronald S. Safer*

                                        Ronald S. Safer
                                        Nick Kahlon
                                        Mariangela Seale
                                        Sarah E. Finch
                                        RILEY SAFER HOLMES & CANCILA LLP
                                        70 W. Madison Street, Suite 2900
                                        Chicago, Illinois 60602
                                        Phone: 312-471-8700
                                        Fax: 312-471-8701
                                        Email: rsafer@rshc-law.com
                                                nkahlon@rshc-law.com
                                                mseale@rshc-law.com
                                                sfinch@rshc-law.com

                                        Jorge M. Leon
                                        MICHAEL BEST & FRIEDRICH LLP
                                        444 W. Lake Street, Suite 3200
                                        Chicago, Illinois 60606
                                        Phone: 312-222-0800
                                        Fax: 312-222-0818
                                        Email: jmleon@michaelbest.com

                                        *Attorneys for Defendants Abbott*
                                        *Laboratories, Abbott Corporate Benefits,*
                                        *Abbott Laboratories Stock Retirement Plan,*
                                        *and Marlon Sullivan*

16

**CERTIFICATE OF SERVICE**

I, Ronald S. Safer, certify that on June 30, 2020, I served a copy of the foregoing document electronically using the Court's CM/ECF system, which will automatically generate notice of this filing to all Counsel of Record.

*/s/ Ronald S. Safer*