**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HEIDE K. BARTNETT, | |
| Plaintiff, | No. 20-CV-02127 |
| v. | Judge Thomas M. Durkin |
| ABBOTT LABORATORIES, ABBOTT CORPORATE BENEFITS, ABBOTT LABORATORIES STOCK RETIREMENT PLAN, MARLON SULLIVAN, and ALIGHT SOLUTIONS, LLC, | |
| Defendants. | |

**MEMORANDUM ORDER AND OPINION**

Plaintiff Heide K. Bartnett brings this action against Abbott Laboratories, Abbott Corporate Benefits, Abbott Laboratories Stock Retirement Plan, Marlon Sullivan (collectively "Abbott Defendants") and Alight Solutions, LLC ("Alight") alleging that the Abbott Defendants and Alight breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. She also alleges that Alight violated the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS 505/1 *et seq*. The Abbott Defendants and Alight separately moved to dismiss Bartnett's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and alternatively to strike its jury demand. R. 33; R. 26. For the following reasons, the Abbott Defendants' motion is granted and Alight's motion is denied.

1

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

**A. Bartnett's Retirement Funds Are Stolen**

Bartnett is a participant in the Abbott Laboratories Stock Retirement Plan ("Retirement Plan"). R. 1 ¶¶ 13-14. When Bartnett retired from Abbott Laboratories

("Abbott Labs") in 2012, she chose to leave her retirement savings in her Retirement Plan account. *Id*. ¶ 14. The $362,510.84 in the account served as her primary retirement savings. *Id*. ¶ 21.

On or about December 29, 2018, someone other than Bartnett accessed her account online. *Id*. ¶ 26. According to the complaint, the imposter visited abbottbenefits.com, selected the "Forgot Password" option, and then entered Bartnett's date of birth and the last four digits of her social security number. *Id*. ¶ 27. The website rejected the entries but gave the imposter an option either to answer security questions or receive a one-time code sent to Bartnett's email address. *Id*. The imposter opted to receive the code, which Bartnett says she never received. *Id*. ¶¶ 27-28. The imposter then used the code to access Bartnett's Retirement Plan account, change her account password, and add direct deposition information for a SunTrust bank account that was not hers. *Id*. ¶ 28-29.

Two days later, someone contacted the Abbott Benefits Center claiming to be Bartnett. *Id*. ¶ 30. Alight operates the Abbott Benefits Center and abbottbenefits.com. *Id*. ¶ 7. The imposter called the Abbott Benefits Center from a phone number that did not belong to Bartnett, had never been used by Bartnett, and was not associated with Bartnett's Retirement Plan account. *Id*. ¶ 30. The imposter told the customer service representative that she tried to process a distribution online but was unsuccessful. *Id*. ¶ 31. The service representative allegedly responded by reading aloud Bartnett's home address and asking the imposter if she still lived there. *Id*. ¶ 32. The service representative then said that a new bank account—such as the

3

SunTrust account set up a few days earlier—must be on file for seven days before money can be transferred to it from the Retirement Plan account. *Id*. The service representative said that a distribution could therefore occur the following Monday. *Id*. ¶ 33.

A day later, on January 1, 2019, Bartnett received a "Direct Deposit Address Addition" notice in the mail. *Id*. ¶ 34. According to Bartnett, her preferred method of communications regarding her Retirement Plan account is email. *Id*. ¶ 17. Had she received the direct deposit notice via email instead of mail, Bartnett alleges that she could have challenged the addition of the SunTrust bank account before any improper transfers were made from her Retirement Plan account. *Id*. ¶ 34.

On January 4, 2019, Bartnett's husband attempted to access the Retirement Plan account online but was unable to because the account password had been changed by the imposter days earlier. *Id*. ¶ 35. Bartnett's husband answered the security question and then changed the account password. *Id*. Bartnett received notification of the password change via email—her preferred method of communication. *Id*. At this point, no funds had been improperly transferred. *Id*.

Then, four days later, on January 8, the imposter again called the Abbott Benefits Center. As before, the imposter called from a phone number that had not previously been associated with the Retirement Plan account or Bartnett. *Id*. ¶ 37. The service representative did not ask the imposter any security questions, opting instead to send another one-time code to Bartnett's email address. *Id*. ¶ 38. Bartnett says that she has no record of receiving that email. *Id*. The imposter then asked the

service representative to transfer $245,000 from the Retirement Plan account to the SunTrust bank account. *Id*. ¶ 40. The service representative complied. *Id*.

The imposter made another call to the service center the following day, on January 9, asking if the funds had been successfully transferred to the SunTrust bank account. *Id*. ¶ 42. The service representative reported that the transfer request had been processed and that the funds would be available on January 14. *Id*. Also on January 9, a letter was sent via first class U.S. Mail to Bartnett advising her of the transfer. *Id*. ¶ 41. Bartnett did not receive the letter until January 14. *Id*. She called the service center on January 15, and the service representative immediately froze Bartnett's Retirement Plan account. *Id*. ¶ 44. According to Bartnett, she would have been able to halt the transfer had she received immediate notification of it via email. *Id*.

## B. Bartnett Contacts the Police

Bartnett reported the theft to the Darien Police Department. *Id*. ¶¶ 46-47. Subpoenas were thereafter served on SunTrust Bank, Alight, and Abbott Benefits Center, requesting all records related to Bartnett's retirement account and the fraudulent transfer of funds. *Id*. ¶ 46. The Darien Police Department also investigated the I.P. address from which Bartnett's account had been accessed. *Id*. ¶ 50. The investigation revealed that the I.P. address was assigned to an individual living in India. *Id*. ¶ 51.

## C. Bartnett and Her Attorney Attempt to Retrieve the Stolen Funds

On January 31, 2019, Bartnett's attorney, Bernard Lord, sent a demand letter to Abbott Benefits Center. *Id.* ¶ 54. The Abbott Labs attorney who responded to the letter made no guaranties that Bartnett would be made whole. *Id.* In the meantime, Bartnett continued to contact the Abbott Benefits Center several times a week. *Id.* ¶¶ 53, 55. She says that while she recovered about $108,485, a service representative told her in April 2019 that she would not receive any additional funds. *Id.* ¶¶ 55–57.

Between March and September 2019, Mr. Lord—Bartnett's attorney—communicated regularly with the Abbott Labs attorney. *Id.* ¶ 58. According to Bartnett, Mr. Lord received an email from the attorney in July 2019, which stated that the attorney was waiting to hear more from "the powers that be" regarding a resolution to Bartnett's case. *Id.* ¶ 58. The attorney sent Mr. Lord another email on August 1, 2019, stating that one of the individuals in the decision chain was dealing with an emergency on another matter. *Id.* ¶ 59. The following day, Mr. Lord informed the Abbott Labs attorney that Bartnett had the investigative records collected by the Darien Police Department. *Id.* ¶ 60. Mr. Lord provided the attorney with the records and then spoke to her over the phone. *Id.* ¶¶ 62–63. On that call, the attorney said that the decision maker for Bartnett's case was out of the country but that she would call Mr. Lord a few days later. *Id.* ¶¶ 63–64.

Mr. Lord did not hear back from anyone at Abbott Labs until December 2019. *Id.* ¶ 65. According to the complaint, Abbott Labs presented a "take-it-or-leave-it"

offer that restored only a fraction of the funds that had been stolen from Bartnett's account. *Id.*

## Discussion

Bartnett's complaint contains two counts. Count I is brought against the Abbott Defendants and Alight for breach of fiduciary duty under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2). Count II is brought against Alight for violations of the ICFA. The Court discusses each count in turn, and then addresses Defendants' motions to strike Bartnett's jury demand.

## I. ERISA Breach of Fiduciary Duty Claim Against the Abbott Defendants and Alight

The Defendants argue that Count I—breach of fiduciary duty—must be dismissed for failure to state a claim.[1] To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (internal citation omitted). To satisfy the first element, a party can either be named as a fiduciary in the plan documents or meet ERISA's functional definition. That is:

> a person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect,

---

[1] The Abbott Defendants also argue that Count I should be dismissed against them because Bartnett failed to exhaust her administrative remedies available under the plan. R. 34 at 13-15. Because the Court finds that Bartnett fails to allege an ERISA breach of fiduciary duty claim against the Abbott Defendants, the Court declines to reach the question of whether she exhausted her administrative remedies.

with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21) (emphasis added); *Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013). "Because a person is deemed a fiduciary only 'to the extent' he or she exercises discretionary authority, 'a person may be an ERISA fiduciary for some purposes, but not for others.'" *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004) (quoting *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 854 (7th Cir.1997)).

The Court considers below whether Bartnett has sufficiently alleged that each defendant is a fiduciary, and if so, whether Bartnett has stated a claim for breach of fiduciary duty under ERISA.

**A. The Abbott Defendants**

<u>1. Abbott Labs</u>

Bartnett does not allege that Abbott Labs is named as a fiduciary in the plan documents; instead, she alleges that Abbott Labs is a functional fiduciary under 29 U.S.C. § 1002(21)(A). *See* R. 1 ¶ 3. Accordingly, Bartnett must sufficiently allege that Abbott Labs is a "fiduciary as that term is defined in [29 U.S.C. § 1002(21)]" and that Abbott Labs was "acting in its capacity as a fiduciary at the time it took the actions that are the subject of the complaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471–72 (7th Cir. 2007) (citing *Pegram v. Herdrich,* 530 U.S. 211, 223–226 (2000)).

Bartnett fails to do so here. Her conclusory allegation that Abbott Labs "exercises authority or control respecting management of the Stock Retirement Plan's assets, [] exercises discretionary authority or discretionary control respecting management of the Plan, and/or [] has discretionary authority or discretionary responsibility in the administration of the Plan" is nothing more than a "formulaic recitation" of 29 U.S.C. § 1002(21). *See Iqbal*, 556 U.S. at 681. While Federal Rule of Civil Procedure 8(a)(2) does not require detailed factual allegations, "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *see also Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009) (affirming dismissal of fiduciary duty claim because complaint's "conclusory statements" failed to sufficiently allege that defendant was a fiduciary). The complaint fails to allege any fiduciary acts taken by Abbott Labs, no less link them to the alleged theft. And while the complaint alleges that the call center and website were used to perpetuate the theft, it also indicates that both are operated by Alight. *See* R. 1 ¶ 7.

Bartnett argues that Abbott Labs is a functional fiduciary because all defendants failed to take necessary steps to protect plan assets. *See* R. 43 at 4 (listing the various ways all defendants allegedly breached their fiduciary duties). But alleging what all defendants failed to do does not establish whether any individual defendant is a fiduciary under the statute. As explained above, Bartnett must sufficiently allege that Abbott Labs meets the statutory definition of fiduciary and

that it acted in its capacity as a fiduciary when it took the actions subject to the complaint. *See supra*; *accord Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether that person was acting as a fiduciary . . . when taking the action subject to the complaint."). Because Bartnett does not do so here, her ERISA breach of fiduciary duty claim against Abbott Labs fails.

### 2. Marlon Sullivan

Marlon Sullivan is the administrator and named fiduciary of the Retirement Plan, so there is no dispute that he had a fiduciary duty to Bartnett. *See* R. 1 ¶ 6; R. 34 at 5. But the parties disagree whether he breached that duty. ERISA imposes fiduciary duties of loyalty and prudence. 29 U.S.C. § 1104(a)(1)(A)–(B). Courts also recognize a fiduciary duty to monitor. *See, e.g.*, *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011). The Abbott Defendants argue that the complaint fails to allege that Sullivan breached any of these duties. *See* R. 34 at 7-11. The Court discusses each duty in turn.

*a. Duty of Loyalty*. Loyalty requires a fiduciary to act "for the exclusive purpose" of providing benefits to participants. 29 U.S.C. § 1104(a)(1)(A) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries[.]"); *accord Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 959 (7th Cir. 1998). The duty also requires a fiduciary not to "mislead plan participants or misrepresent the terms or administration of a plan." *Vallone v. CAN Fin. Corp.*, 375 F.3d 623, 640 (7th Cir. 2004).

10

Bartnett contends that Sullivan breached his duty of loyalty because the abbottbenefits.com website misrepresents how plan assets are administered and safeguarded. *See* R. 43 at 6 (citing R. 1 ¶ 22-25). But as discussed above, the complaint indicates that Alight—not Sullivan or anyone else—operates the website. *See* R. 1 ¶ 7. The Court cannot infer that Sullivan misled plan participants through a website he does not operate. And because the complaint does not allege that Sullivan misled Bartnett or acted contrary to the "exclusive purpose" of providing benefits to plan participants, it fails to plausibly allege that Sullivan breached his duty of loyalty.

*b. Duty of Prudence.* Prudence requires an ERISA fiduciary to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). A fiduciary's duty of prudence traditionally arises in the context of making investments on behalf of an ERISA plan. *See, e.g., Tibbie v. Edison International*, 135 S. Ct. 1823, 1829 (2015) ("The parties [] agree that the duty of prudence involves a continuing duty to monitor investments and remove imprudent ones under trust law."); *GreatBanc Trust Co.*, 835 F.3d at 678 (duty of prudence "includes choosing wise investments and monitoring investments to remove imprudent ones"); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("A fiduciary must behave like a prudent investor under similar circumstances.").

Bartnett does not contend that Sullivan or any other defendant failed to make sound investment decisions on behalf of the Retirement Plan. Instead, Bartnett

asserts that the duty of prudence extends to the "safeguarding of data and prevention of scams." R. 43 at 7. But Bartnett has not pointed the Court to any case law in the Seventh Circuit that states as much. Further, the cases on which Bartnett relies are inapposite. For example, Bartnett points to *Keneseth v. Dean Health Plan, Inc*., but that case concerned the duty to "disclose material information," not safeguard it. 610 F.3d 452 (7th Cir. 2010). Bartnett also points to a District of New Jersey case, *Canale v. Yegen*, 782 F. Supp. 963 (D.N.J. 1992), but that comparison fares no better. *Canale* involved a fiduciary's duty to "diversify plan assets invested in an [Employee Stock Ownership Plan]" when the plan is impaired by the fiduciary's own fraudulent conduct. 782 F. Supp. at 968. No similar allegations exist here. Finally, Bartnett cites to *Chao v. Merino*, a Second Circuit decision concerning a plan administrator who allowed a known embezzler to do business with the fund. 452 F.3d 182, 183 (2d Cir. 2006). In analyzing whether the plan administrator had breached its duty of prudence, the Second Circuit stated that "[i]f a fiduciary was aware of a risk to the fund, he may be held liable for failing to investigate fully the means of protecting the fund from that risk." *Id*. at 183. Applying that reasoning here, the complaint does not allege that Sullivan knew about the unauthorized attempts to access Bartnett's account. Further, Bartnett's account was frozen as soon as she told the call center about the improper withdrawal of funds. R. 1 ¶ 44.

In sum, Bartnett has not alleged that Sullivan breached his duty of prudence.

*c. Duty to Monitor*. "Individuals who appoint ERISA fiduciaries have a duty to monitor those fiduciaries' actions and to provide them with the information necessary

to carry out their responsibilities." *Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848, 867 (N.D. Ill. 2009); *see also Howell*, 633 F.3d at 573 ("There is no doubt that those who appoint plan administrations have an ongoing fiduciary duty under ERISA to monitor the activities of their appointees."). The Department of Labor has explained that the duty requires reviewing "the performance of trustees and other fiduciaries" at "reasonable intervals" and "in such [a] manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and the statutory standards, and satisfied the needs of the plan." 29 C.F.R. § 2509.75–8 at FR–17 (Department of Labor questions and answers).

While Bartnett alleges that Sullivan "fail[ed] to monitor other fiduciaries' distribution processes, protocols, and activities," R. 1 ¶ 73, that allegation is conclusory, and amounts to "nothing more than speculation." *Neil v. Zell*, 677 F. Supp. 2d 1010, 1024 (N.D. Ill 2009) (dismissing failure to monitor claim because complaint contained no more than a "bare assertion that the defendants breached their duty to monitor"). Further, the complaint does not allege any monitoring process between Sullivan and Alight, let alone a defect in that process. And while Bartnett makes several allegations concerning Alight's own protocols, none of those allegations speak to Sullivan or his duty to monitor Alight. The complaint therefore fails to allege that Sullivan breached a fiduciary duty to monitor. Accordingly, the breach of fiduciary duty claim as to Sullivan is dismissed.

### 3. Abbott Laboratories Stock Retirement Plan

Bartnett also names the Retirement Plan as a defendant. But while a plan may be sued in an action "to recover benefits due" to a participant under ERISA § 502(a)(1)(B), it cannot be sued as a fiduciary in an action to recover "losses to the plan" under ERISA § 502(a)(2). *See Steinman v. Hicks*, 252 F. Supp. 2d 746, 756–57 (C.D. Ill. 2002) (noting that profit sharing plan "cannot be named as a defendant" in a § 502(a)(2) suit), *aff'd*, 352 F.3d 1101 (7th Cir. 2003). Bartnett's opposition brief ignores this argument. Bartnett's breach of fiduciary duty claim brought under ERISA § 502(a)(2) against the Retirement Plan is dismissed.

### 4. Abbott Corporate Benefits

Bartnett names Abbott Corporate Benefits as a defendant and alleges that it is the sponsor of the Retirement Plan. The Abbott Defendants argue that Abbott Corporate Benefits is not a legal entity and that Bartnett's allegation that Abbott Corporate Benefits is the plan sponsor is based on a misreading of the Plan's 2018 Annual Return/Report of Employee Benefit Plan Form 5500. That form identifies Abbott Labs as the plan sponsor, not Abbott Corporate Benefits, and lists Abbott Labs' mailing address as "Corporate Benefits, D-589, AP6B-2, 1000 Abbott Park Road Abbott Park Illinois 60064-6222."[2] Bartnett ignores this argument in her response brief. Bartnett's fiduciary duty claim against Abbott Corporate Benefits is dismissed.

---

[2] Abbott Lab's Form 5500 is publicly available on the Department of Labor's website. District courts can take judicial notice of information on government websites. *See Denius v. Dunlap*, 330 F.3d 919, 926–27 (7th Cir. 2003). The Court does so here.

**B. Alight, LLC**

According to the complaint, Alight operated the customer service call center and website. R. 1 ¶ 7. The breach of fiduciary duty claim against Alight is premised on this allegation. Alight argues that the claim should be dismissed because: (1) the complaint's legal conclusions do not demonstrate that Alight is a fiduciary of the Retirement Plan; and (2) Alight performed ministerial functions on behalf of the plan, and such functions are not fiduciary in nature. *See* R. 27 at 5-7. The Court rejects both arguments.

The complaint alleges far more than legal conclusions concerning Alight. The complaint catalogues the repeated actions taken by Alight related to the Retirement Plan and its assets, including, most importantly, the disbursement of $245,000 in plan assets. *See* R. 1 ¶ 40. As explained above, an ERISA fiduciary exercises discretionary control or authority over a plan's management, administration, or assets. *See* 29 U.S.C. § 1002(21). Unlike the sparse allegations concerning the Abbott Defendants, there are sufficient allegations on the face of the complaint to infer that Alight acted as a fiduciary by exercising discretionary control or authority over the plan's assets. And even though Alight argues that its actions were purely ministerial, Bartnett's complaint challenges that assertion. "Since competing factual allegations and any reasonable inferences drawn from them must be resolved in favor of the nonmoving party at the pleading stage," Alight's factual assertions do not provide a proper basis to dismiss Bartnett's claim. *Carlson v. Northrop Grumman Corp.*, 196 F.

Supp. 3d 830, 836–37 (N.D. Ill. 2016) (denying motion to dismiss where defendant argued that its action were not fiduciary).

For these reasons, and because Alight does not contest the elements of breach or causation, the Court denies Alight's motion to dismiss Bartnett's breach of fiduciary claim.

## II. Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA") Claim Against Alight

Bartnett also brings an ICFA claim against Alight. The ICFA prohibits "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 815 ILCS § 505/2. Alight argues that Bartnett's ICFA claim should be dismissed because it is preempted by ERISA and fails to sufficiently allege a deceptive or unfair act. *See* R. 27 at 8-13. The Court discusses each argument in turn.

## A. Preemption of the ICFA Claim

ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). "A state law 'relates to' a benefit plan in the normal sense of the phrase, if it has connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (citing *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985)). A state law can have a "connection with or reference to" an employee benefit plan where it: "(1) mandates employee benefit structures or their administration; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; and (3) provides an alternative enforcement mechanism to

16

ERISA." *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 775 (7th Cir. 2002) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658–60 (1995)).

Alight argues that the third *Biondi* prong is implicated here—i.e., that Bartnett is using Illinois law as an alternative enforcement mechanism to ERISA. *See* R. 27 at 8; R. 50 at 7. "The Supreme Court has identified two categories of state laws that act as alternative enforcement mechanisms to ERISA. One is where the existence of a pension plan is a critical element of a state-law cause of action, and the other is where a state statute contains provisions that expressly refer to ERISA or ERISA plans." *Biondi*, 303 F.3d at 776. The ICFA does not expressly refer to ERISA or ERISA plans. *See* 815 ILCS § 505/1 *et seq*. Thus, Alight's preemption argument succeeds if the existence of the Retirement Plan is a critical element of the ICFA claim, or if the ICFA claim requires the Court to interpret the terms of the Retirement Plan. *See Laborers' Pension Fund v. Lake City Janitorial, Inc.*, 758 F. Supp. 2d 607, 615 (N.D. Ill. 2010); *Metro. Life Ins. Co. v. Yitao Sun*, No. 12 C 6036, 2013 WL 4759586, at *10 (N.D. Ill. Sept. 4, 2013).

Bartnett argues that preemption does not apply on either ground. The Court agrees. The ICFA claim does not require the Court to interpret the terms of the Retirement Plan. Indeed, the claim is premised on the allegations that Alight misrepresented the quality of its services and engaged in an unfair business practice, which have little to no bearing on the plan itself. *See* R. 1 ¶ 76-78. And while the ICFA claim involves an ERISA plan, the claim arises in the context of that plan. *See Biondi*,

303 F.3d at 779–80 (no preemption where "the Plan is merely the context in which [the] fraudulent conduct occurred"); *Yitao Sun*, 2013 WL 4759586, at *10 (no preemption where "the allegations focus on conduct extrinsic to the plan"). The complaint specifically alleges that Alight made representations online about the quality of its services (R. 1 ¶¶ 24-25, 76) and that those representations were misleading because Alight failed to protect her retirement money (*Id*. ¶¶ 78-79). It also alleges that Alight engaged in an unfair business practice because it failed to implement proper security procedures online and over the phone, which led to the improper withdrawal of her funds. *Id*. ¶ 78. The claim therefore seeks recovery for activities that occurred outside the terms of the plan. Accordingly, the ICFA claim is not preempted by ERISA.

## B. Sufficiency of the ICFA Claim

The ICFA "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 266 Ill. Dec. 879, 775 N.E.2d 951, 960 (2002)). The Supreme Court of Illinois has held that recovery under the ICFA "may be had for unfair as well as deceptive conduct." *Id*.

When an ICFA claim is based on fraud, the sufficiency of the complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir.

2014). When an ICFA claim is not based on fraud, the sufficiency of the complaint need only meet the less-stringent pleading standard in Rule 8(a). *See Windy City Metal Fabricators*, 536 F.3d at 670.

Bartnett argues that Alight violated the ICFA by engaging in both a deceptive act and an unfair business practice. *See* R. 1 ¶¶ 75-81. The Court first addresses Bartnett's deceptive act theory and then turns to her unfair business practice theory.

1. Deceptive Act

"To succeed on a claim for deceptive conduct under the ICFA, [a] plaintiff must allege (1) a deceptive act or practice, (2) intent on the defendant's part that plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *W. Howard Corp. v. Indian Harbor Ins. Co.*, 2011 WL 2582353, at *3 (N.D. Ill. June 29, 2011) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 594 (Ill. 1996)). As to the first element—whether a statement is deceptive—courts ask if the statement "creates a likelihood of deception or has the capacity to deceive" a reasonable consumer. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). "[T]he allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

Bartnett argues that statements appearing on Alight's website were misleading because they falsely suggested that her retirement funds would be

protected against theft. She specifically points to Alight's representation that it was "committed to investing in innovations that benefit all of our clients" with a "[f]ull range of technology-enabled plan solutions" to "help your employees through all phases of retirement, offering knowledge and support for Social Security, Medicare and other common retirement questions." R. 44 at 11 (citing R. 1 ¶¶ 24-25). But none of those statements "can be read to create a likelihood of deception or to have the capacity to deceive." *Bober*, 246 F.3d at 938. Indeed, the statements do not reference plan funds or even security measures taken to protect such funds. Bartnett may have read the statements and relied on them but that does not mean that a reasonable consumer would consider them capable of deception.

As this Court has previously acknowledged, whether a statement is deceptive is often a question of fact, but "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Gubala v. CVS Pharmacy, Inc*., No. 14 C 9039, 2015 WL 3777627, at *6 (N.D. Ill. June 16, 2015) (citing *Ibarrola v. Kind, LLC*, No. 13 C 50377, 2015 WL 1188498, at *3 (N.D. Ill. Mar. 12, 2015). Such is the case here. Accordingly, Bartnett's ICFA claim based on a deceptive act is dismissed.

### 2. Unfair Business Practice

To evaluate whether a business practice is unfair, a court must ask whether it: (1) offends public policy; (2) is "immoral, unethical, oppressive, or unscrupulous"; or (3) causes substantial injury to consumers. *Batson v. Live Nation Entm't, Inc*., 746 F.3d 827, 830 (7th Cir. 2014). A practice does not need to meet all three criteria to be

actionable; it "may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Robinson*, 201 Ill. 2d at 418). Further, conduct need not be deceptive to be considered unfair. *Id.*

Bartnett argues that the third factor—"immoral, unethical, oppressive, or unscrupulous" conduct—applies here. R. 44 at 10. She argues that Alight failed to train its employees and impose sufficient security measures despite knowing that such failures could lead to theft of plan funds. *Id.* Bartnett points the Court to *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893 (N.D. Ill. 2012) for support. In *Worix*, the plaintiff argued that a medical company engaged in an unfair business practice by failing to safeguard the plaintiff's medical information from theft. *Id.* at 895. The plaintiff alleged that the medical information was neither encrypted nor password protected when it was stolen, and that the notification the medical company sent him following the theft was deficient. *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 700 (N.D. Ill. 2012).

The Court finds *Worix* persuasive and that Bartnett has sufficiently stated a claim for unfair business practice under ICFA. Similar to the plaintiff in *Worix*, Bartnett's complaint alleges that Alight failed to protect Bartnett's personal information and properly notify her of important changes to her account. *See* R. 1 ¶ 78. According to the complaint, Alight's failures allowed the scammer to steal hundreds of thousands of dollars in retirement funds, and she says that proper security measures would have prevented the theft. *Id.* These allegations are sufficient to state an ICFA claim for unfair business practices.

Alight argues that the various security measures referenced in the complaint shows that Alight took adequate steps to protect Bartnett's retirement funds. *See* R. 50 at 9-10. This argument is unpersuasive because the measures that Alight cites are the same measures that failed to stop the theft. The Court further rejects Alight's argument that Bartnett's unfair business practice allegations must meet the heightened pleading standard under Rule 9(b). The Court construes Bartnett's ICFA claim to be brought under separate theories of liability: deceptive conduct and unfair business practice, and the latter is not premised on the former. Indeed, the complaint alleges that Alight deceived Bartnett into thinking that her retirement funds were secure, and separately alleges that Alight failed to implement security measures that would have protected her assets. "Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices . . . need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators*, 536 F.3d at 669.

## C. Defendants' Motion to Strike

Finally, Defendants argue that the jury demand as to the ERISA breach of fiduciary duty claim should be stricken. R. 34 at 15; R. 27 at 4 n.3. "Nearly 30 years of Seventh Circuit authority hold[s] that there is no right to a jury trial under ERISA." *George v. Kraft Foods Glob., Inc.*, No. 07 C 1713, 2008 WL 780629, at *2 (N.D. Ill. Mar. 20, 2008) (collecting cases). Indeed, "[t]he general rule in ERISA cases is that there is no right to jury trial because ERISA's antecedents are equitable, not legal."

22

*McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 576 (7th Cir. 2007). Bartnett does not challenge the Defendants' motions to strike.

Because the Court dismisses Count I against the Abbott Defendants, their motion to strike is denied as moot. Alight's motion is granted but only as to the breach of fiduciary duty claim.

## Conclusion

For the reasons stated above, Alight's motion to dismiss, R. 26, is denied and the Abbott Defendants' motion to dismiss, R. 33, is granted. Claim I against the Abbott Defendants is dismissed without prejudice. Bartnett may file a motion for leave to file an amended complaint if she believes she can cure the deficiencies in the allegations against the Abbott Defendants described in this opinion. That motion must be filed within 21 days or dismissal of the claims against the Abbott Defendants will be with prejudice.

A status phone hearing is set for 21 days, at which the parties should be prepared to set a discovery schedule. Bartnett should also be prepared to state whether she intends to move for leave to file an amended complaint. Counsel for the Abbott Defendants does not need to appear unless Bartnett plans to move for leave to file an amended complaint.

ENTERED:

_Thomas M Durkin_

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: October 2, 2020

23