UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEIDE K. BARTNETT, | |
| Plaintiff, | |
| v. | No. 20-CV-02127 |
| ABBOTT LABORATORIES, MARLON SULLIVAN, and ALIGHT SOLUTIONS, LLC, | Judge Thomas M. Durkin |
| Defendants. | |

**MEMORANDUM ORDER AND OPINION**

Plaintiff Heide K. Bartnett originally filed this action against Abbott Laboratories, Abbott Corporate Benefits, the Abbott Laboratories Stock Retirement Plan, and Marlon Sullivan alleging that they breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. R. 1. Her complaint brought similar allegations against Alight Solutions, LLC ("Alight"). All defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 26; R. 33. In an order dated October 2, 2020, the Court granted in part and denied in part the defendants' motions. R. 52. Following that order, Bartnett filed her first amended complaint against Abbott Labs and Sullivan (collectively, "the Abbott Defendants"), and Alight. R. 54. Now before the Court is the Abbott Defendants' motion to dismiss Bartnett's amended complaint pursuant to Rule 12(b)(6). R. 59. For the reasons stated below, that motion is granted.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background[1]

The Court provided a detailed factual background of the case in its prior order. *See* R. 52 at 2-7. Briefly explained, and as relevant here, Bartnett is a retired former employee of Abbott Labs and a participant in the Abbott Laboratories Stock Retirement Plan. Abbott Labs and Sullivan are plan fiduciaries. Alight (then Aon Hewitt) was hired to serve as plan administrator in 2003 and its contract was renewed in 2015. As plan administrator, Alight operates the plan's customer service phone line as well as its website, abbottbenefits.com, which plan participants can use to access information about their retirement accounts.

On or about December 29, 2018, an identity thief visited abbottbenefits.com, accessed Bartnett's retirement account (which had over $362,500 at the time), and added direct deposit information for a SunTrust bank account. A few days later, the thief dialed the plan's customer service phone line and claimed to be Bartnett. The thief told the customer service representative that she tried to process a distribution online but was unsuccessful. The service representative responded by reading aloud a home address and asking the thief if she still lived there. The service representative then said that a new bank account—like the SunTrust account set up a few days

---

[1] The following is based on allegations appearing in Bartnett's amended complaint as well as documents attached to the Abbott Defendants' motion to dismiss. The Court may consider those documents in resolving this motion because they are either "referred to in the plaintiff's complaint and [ ] central to [her] claim," *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), or a matter of public record, *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). Bartnett did not dispute the documents in her opposition to the motion to dismiss.

earlier—must be on file for seven days before money can be transferred from the retirement account.

On January 8, the thief again called the plan's customer service phone line. The representative did not ask the thief any security questions, opting instead to send a one-time code to Bartnett's email address. Bartnett has no record of receiving that email. The thief then asked the representative to transfer $245,000 from Bartnett's retirement account to the SunTrust account. The representative complied.

The thief placed another call to the customer service line the following day, January 9, asking if the funds had been successfully transferred to the SunTrust account. The representative said that the transfer request had been processed and that the funds would be available on January 14. Also on January 9, a letter was sent via first-class mail to Bartnett advising her of the transfer. Bartnett did not receive the letter until January 14. She called the customer service phone line on January 15, and the representative immediately froze Bartnett's plan account.

Over the next several months, Bartnett and her attorney corresponded with representatives from the Abbott Benefits Center and an attorney for Abbott Labs in an effort to recover the stolen funds. Through these discussions, Bartnett recouped $108,485.02 of the $245,000 that was stolen. She has not yet recovered the remaining funds.[2]

Bartnett's original complaint brought counts against the Abbott Defendants and Alight. As stated, both parties moved to dismiss the complaint, and the Court granted the

---

[2] Bartnett's retirement account had over $362,500 immediately before the theft. She has not yet recouped about $136,500, though her complaint seeks additional funds beyond that amount to cover reasonable investment earnings, tax liability, and more.

Abbott Defendants' motion but denied Alight's motion.[3] Bartnett's amended complaint brings the same count against the Abbott Defendants that was brought before— breach of fiduciary duty under Section 502(a)(2) of ERISA.

## Analysis

To state a claim for breach of fiduciary duty, a plaintiff must sufficiently allege "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (internal citation omitted). For purposes of this motion, the Abbott Defendants do not contest the first or third elements. They focus instead on the second element, arguing that Bartnett has not sufficiently alleged that they breached their fiduciary duties of prudence and monitoring.[4]

Bartnett contends otherwise. She claims that the Abbott Defendants breached their duties by hiring Alight in 2003 and again in 2015 despite knowing that Alight "[fumbled] cybersecurity and data privacy" responsibilities, "lack[ed] experience with retirement plans," "fail[ed] to provide quality plan administration services," "[had]

---

[3] More specifically, the Court found that Bartnett stated plausible claims for relief against Alight under ERISA and Illinois law. Bartnett and Alight are now engaged in discovery.

[4] The Abbott Defendants also argue that the complaint should be dismissed because Bartnett did not exhaust her administrative remedies under the retirement plan. The Court did not reach this question when it previously dismissed Bartnett's complaint. Here, too, the Court does not need to decide whether Bartnett exhausted her administrative remedies since the allegations supporting her fiduciary duty claim are insufficient.

inadequate policies and practices," and was subject to "recent litigation and/or enforcement actions." R. 54 ¶¶ 50, 85-88. In support, she points to the following incidents involving Alight and its predecessor company, Aon Hewitt:

- In 2013, an international cybercrime ring targeted Aon Hewitt and several other private companies, obtaining customer login information and stealing millions of dollars from several financial institutions. *Id.* ¶ 52.

- In 2015, a manual mailing error at Aon Hewitt resulted in the disclosure of client information to an unintended recipient. The information included names, dates of birth, Social Security Numbers, and pension information. *Id.* ¶ 53.

- Also in 2015, participants in a benefits program "inadvertently" accessed personal information about other participants, including their Social Security Numbers. *Id.* ¶ 54.

- In 2016, an unknown person or persons "potential[ly]" accessed the personal records of 2,892 individuals. The records included Social Security Numbers, contact information, dates of birth, and more. *Id.* ¶ 55.

- Also in 2016, Alight allegedly allowed an unauthorized user to initiate three separate transfers from a 401(k) retirement account belonging to someone else. The transfers totaled $99,000. *Id.* ¶ 56.

- In 2019, Alight disclosed that emails sent to certain individuals since 2014 inadvertently included their Social Security Numbers. Alight also disclosed that between 2016 to 2019, URLs linking to certain Alight websites included Social Security Numbers and dates of birth. *Id.* ¶ 58.

- Also in 2019, the U.S. Department of Labor ("DOL") disclosed that it is investigating Alight for processing unauthorized transfers from ERISA plan accounts and failing to timely report cybersecurity breaches. *Id.* ¶ 59.

Bartnett claims that the Abbott Defendants knew or should have known about these incidents, and further contends the Abbott Defendants failed to monitor Alight's performance as plan administrator. *Id.* ¶ 50, 61-62, 85, 87. If the Abbott

Defendants had not breached their fiduciary duties of prudence and monitoring, Bartnett argues, then her retirement funds would not have been stolen.

Because Bartnett's claim encompasses two separate duties, and because each duty involves separate lines of analysis, the Court considers each in turn.

***Duty of Prudence***: ERISA imposes a duty on fiduciaries to act with the same "care, skill, prudence, and diligence" as a "prudent man." 29 U.S.C. § 1104(a)(1)(B). As stated in the Court's previous order, this duty of prudence often arises in the context of making investments on behalf of an ERISA plan. *See* R. 52 at 11 (quoting *Tibbie v. Edison International*, 135 S. Ct. 1823, 1829 (2015) ("The parties [] agree that the duty of prudence involves a continuing duty to monitor investments and remove imprudent ones under trust law."); *GreatBanc Trust Co.*, 835 F.3d at 678 (duty of prudence "includes choosing wise investments and monitoring investments to remove imprudent ones"); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("A fiduciary must behave like a prudent investor under similar circumstances.")). Neither party has pointed the Court to an ERISA fiduciary duty case that involves allegations similar to those alleged here, nor is the Court aware of one. In any event, the Seventh Circuit has expressly stated that a plaintiff who brings a breach of fiduciary claim, including one based on imprudence, must "plausibly allege action that was objectively unreasonable." *Divane v. Northwester*n Univ., 953 F.3d 980, 988 (7th Cir. 2020) (citing *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016)).

Bartnett fails to do so here. Although she claims that the Abbott Defendants were imprudent for hiring Alight, the incidents referenced in her amended complaint

occurred *after* Alight was first offered the job. Indeed, Alight was hired in 2003, *see* R. 27-1 at 1, and the first incident identified by Bartnett occurred in 2013, *see* R. 54 ¶ 52. The Court cannot infer that the Abbott Defendants breached their duty of prudence by hiring Alight in 2003 based on events a decade later. *See George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 796 (7th Cir. 2011) (noting that it is "impermissible" to "attempt to prove imprudence by hindsight") (citation omitted).

To be sure, Bartnett also argues that the Abbott Defendant breached their duty of prudence by renewing Alight's contract in 2015. But Bartnett's claim still fails because the incidents that pre-date Alight's rehiring do not give rise to the inference that renewing Alight's contract was objectively unreasonable. Indeed, the two incidents that occurred before Alight was rehired were limited in size and scope, did not involve significant lapses in security protocols, and no client funds were stolen.[5] One incident involved a manual mailing error in which client information was sent to an unintended recipient. R. 54 ¶ 53; R. 60-4 at 32. The other concerned a sensitive file that was inadvertently accessed by the wrong person. R. 54 ¶ 54; R 60-4 at 35. And while a third incident involved cybersecurity thieves engaged in an international scheme to defraud, they "targeted" Aon Hewitt—as well as the U.S. government and over a dozen private institutions—and as mentioned, no allegations in the complaint

---

[5] Bartnett argues that this determination impermissibly "weigh[s] the evidence" in the Abbott Defendants' favor. *See* R. 61 at 5. Not so. As stated, an ERISA fiduciary duty claim must "plausibly allege action that was objectively unreasonable." *Divane*, 953 F.3d at 988. The Court is simply determining whether Bartnett's allegations plausibly demonstrate unreasonable conduct on the part of the Abbott Defendants. That is proper analysis under a Rule 12(b)(6) motion.

suggest that the thieves took a penny from Aon Hewitt's customers. *See* R. 54 ¶ 52 (citing *United States v. Sarapka et* al., No. 13-6089 (D.N.J. June 13, 2013)); R. 60-3 at 5.

In her opposition brief, Plaintiff cites to a case from the Second Circuit and argues that an ERISA fiduciary duty claim may survive a motion to dismiss if the complaint "alleges fact[s] that show that an adequate investigation would have revealed to a reasonable fiduciary that their hiring was improvident." R. 61 at 2 (quoting *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)). The Court is not bound by Second Circuit case law, but even if it was, *Pension Ben. Guar. Corp* does not rescue Plaintiff's claim. Although an investigation by the Abbott Defendants in 2015 would have shown that two isolated incidents occurred under Aon Hewitt's watch, Aon Hewitt presumably handled tens of thousands of customer transactions that year, and rehiring a plan administrator with a less-than-perfect track record does not plausibly allege imprudent conduct. That is especially so given that neither incident seemed to involve Alight's performance on behalf of the Abbott Labs Stock Retirement Plan. *See* R. 60-4 at 35 (describing how "Reed Elsevir program participant[s]" inadvertently received sensitive information); *Id.* at 31 (noting that a manual mailing error led to the disclosure of information about an unidentified individual). In fact, no incidents referenced in the amended complaint, other than the theft from Bartnett's account in January 2019, seem to involve Alight's performance for the Abbott plan. *See* R. 54 ¶¶ 52-58. The Court cannot conclude, then, that

9

Bartnett has plausibly alleged that rehiring Alight to serve as the plan's administrator in 2015 was "objectively unreasonable." *See Divane*, 953 F.3d at 988.

**Duty to Monitor**: "Individuals who appoint ERISA fiduciaries have a duty to monitor those fiduciaries' actions and to provide them with the information necessary to carry out their responsibilities." *Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848, 867 (N.D. Ill. 2009); *see also Howell*, 633 F.3d at 573 ("There is no doubt that those who appoint plan administrations have an ongoing fiduciary duty under ERISA to monitor the activities of their appointees."). The Department of Labor has explained that the duty requires reviewing "the performance of trustees and other fiduciaries" at "reasonable intervals" and "in such [a] manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and the statutory standards, and satisfied the needs of the plan." 29 C.F.R. § 2509.75–8 at FR–17 (Department of Labor questions and answers).

The Court previously dismissed Bartnett's duty to monitor claim against the Abbott Defendants because the conclusory allegations in her original complaint amounted to "nothing more than speculation." R. 52 at 13 (citing *Neil v. Zell*, 677 F. Supp. 2d 1010, 1024 (N.D. Ill 2009)). Plaintiff's amended complaint now contains over a dozen new allegations. R. 54 ¶¶ 50-62, 85-89. And many of them are quite detailed. *See, e.g.*, *Id.* ¶¶ 56-57. The problem with Bartnett's new allegations, however, is that none of them speak to whether the Abbott Defendants monitored (or failed to monitor) Alight's performance vis-à-vis the Abbott Labs Stock Retirement Plan. The allegations focus instead on Alight's performance as an administrator for *other* plans,

*see, e.g.*, R. 54 ¶ 54 (Reed Elsevier LTD Program); *id.* ¶¶ 56-57 (Estee Lauder Plan), and the Court cannot reasonably infer that the Abbott Defendants breached their duty to monitor based on incidents that did not involve them. Whether the Abbott Defendants knew about these incidents does not change this conclusion. The duty to monitor requires fiduciaries to keep track of how an administrator performs for their *own* plan, not others'. *See* 29 C.F.R. § 2509.75–8 (fiduciaries should monitor to ensure "compliance with *the terms of the plan* and statutory standards, and satisfies *the needs of the plan*") (emphasis added); *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir. 1984) ("[Fiduciaries cannot] abdicate their duties under ERISA merely through the device of giving their lieutenants primary responsibility for the day to day management of the trust.").

The DOL's investigation of Alight does not save Bartnett's claim from dismissal. Public court filings show that the investigation opened six months after Bartnett's funds were stolen. *Compare* R. 54 ¶ 40 (theft occurred in January 2019), *with Scalia v. Alight Solutions*, No. 20-cv-2138 (N.D. Ill. Apr. 6, 2020) (Dkt. 1) (investigation opened on July 30, 2019). The Abbott Defendants cannot be expected to know about the investigation before it even began. And although Bartnett argues that the previous incidents demonstrate that the Abbott Defendants knew about Alight's "lax attitude toward data security," she has not alleged any action by the Abbott Defendants plausibly showing that they failed to monitor Alight's performance as it relates to the Abbott Labs Stock Retirement Plan specifically. *See Leigh*, 727 F.2d at 135 (trust fiduciaries were obligated to monitor administrators' management of specific trust).

On a final note, counsel explained at the parties' last status hearing that Bartnett and the Abbott Defendants have started limited discovery pursuant to the Court's order on November 6, 2020. Once this limited discovery closes, Bartnett may move for leave to file a second amended complaint if she reasonably believes that new allegations address the deficiencies described in this opinion. But for now, absent plausible allegations in the first amended complaint that the Abbott Defendants were objectively unreasonable, the Court finds that Bartnett has failed to state a fiduciary duty claim based on the duties of prudence and monitoring.

## Conclusion

For the reasons stated above, the Abbott Defendants' motion to dismiss, R. 59, is granted. Bartnett's fiduciary duty claim is dismissed without prejudice. As stated above, Bartnett may file a motion for leave to file a second amended complaint if she reasonably believes she can cure the deficiencies described in this opinion regarding the Abbott Defendants. That motion must be filed within 30 days or dismissal of the fiduciary claim against the Abbott Defendants will be with prejudice. Should the Abbott Defendants move to dismiss Bartnett's second amended complaint, and should the Court grant that motion, dismissal will likely be with prejudice given the repeated opportunities Bartnett has had to state a plausible claim for relief against the Abbott Defendants.

ENTERED:

_Thomas M Durkin_

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  February 8, 2021

12